CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. CARON v. QUICKUTZ, INC. Judge found intent to deceive in the form of a false affidavit which he called egregious conduct. And so why didn't he apply Theracent's correctness? He didn't, Your Honor, for two reasons. One, he did that on summary judgment. And particularly, issues of intent are issues that ought to be tried. You don't know what someone intends. You shouldn't be making inferences from filings about someone's intent without giving them a chance to have their day in court and hear it. What's your best case for that? I mean, you sound like you're citing a legal principle. First of all, I would refer the court to the kangaroos case that we cite in our brief. And I would also refer the court to Theracent. I think what Theracent's teach you is if the court means to imply a standard of materiality which means the defendant knew. Wait, are you talking about the materiality prong or the intent prong? Intent prong, both. I think the intent prong Theracent says, whether I should have known even gross negligence isn't enough. You have to show intent. You have to show specific intent to deceive the examiner. And it seems to me that if you look at it. What about if we're hanging our hat on the so-called, I don't like the word exception, but the so-called other piece of Theracent that says, at least but for materiality is not necessarily necessary if we have affirmative egregious misconduct. So what does that do if we are to conclude that with respect to the materiality prong? Doesn't that obviate the intent prong? No, not at all, Your Honor. But for materiality, I'm sorry, egregious, affirmative egregious misconduct obviates the need to find but for materiality. We contend here there was an affirmative egregious misconduct. And the court should have had to find but for materiality on all of it. But you still have to find intent. Intent is a separate element from either but for materiality or affirmative egregious misconduct. And the intent, particularly, is a matter of what was in the mind of the person who did it. It's in the negligence. Is it within our current law that if there is no reasonable other interpretation of a false affidavit, that intent is presumed? Your Honor, I think the right answer is to go back to answer your question slightly differently. I think in each case of inequitable conduct that the district court relied on, there is another interpretation. And there was an issue of fact to be tried. As to the inventor issue, for example, there's a dispute about what Mr. Dilan did. He testified he contributed to it. Mr. Karan testified he contributed to one thing. The patent office had them amend the original patent application. His name was then taken out. That's an issue of fact that the court ought to litigate and resolve. Well, only if we conclude that it's a reasonable inference, that there are other reasonable inferences, or that there's not one singular reasonable inference. If there's only one singular reasonable inference, then what's the problem? I mean, I know you disagree with whether that's the case or not, but that's obviously a question. If there is indeed only one single reasonable inference that can be drawn from fact, I agree with you, then that meets the standard under Theracent. Where, however, there are multiple reasonable inferences, or even more than one reasonable inference, to get there has to be the only reasonable inference that can be drawn. And on this record, on the three issues the court looked at, the Stratfork, what we call the Stratforker Declaration, the Inventorship Issue, and Mr. Karan's Declaration, there are different inferences that can be drawn as we set forth in detail on each of those issues in our brief. And what Judge Wade did here that was inappropriate was decide that as a matter of summary judgment. That's not an appropriate issue for summary judgment. There should have been a trial. If we were here arguing after a trial, this would be a different appeal. But Judge Wade, to use the vernacular, jumped the gun on this case. He sort of decided who he thought ought to win, and he went ahead and ruled on it. And that's not what you do with a search warrant. Where is the intent to deceive, and by whom, with the five women's declarations? I believe that the intent to deceive, that you have to show, is that the applicant, Spellbinders and Karan, intended to deceive the court by submitting them. I don't really think the issue is the women's intent themselves in signing the affidavits. That may be an issue that goes to something other than the passability of it. And as we point out in our brief, again, there's a significant question of whether anyone intended to deceive anyone with respect to that. It is every bit as reasonable to assume that Mr. Karan, that Spellbinders, and even that the ladies who signed the affidavits thought, one, as to the two people who were supposed to have lack of experience, that being customers who use these things a lot was sufficient. Does it have to be a person's intent, or can a company have an intent? I guess, Your Honor, my answer to that is at the end, companies don't have intent, the people don't have. Somebody in the company has to have the intent for the company to have the intent. Does that have to be identified? I would think to show intent, yes, you have to identify the person, or at least the position of the person who made the decision. Have we said that in our case law? I'm not aware of that, Your Honor. Yes, we have. Exergen. OK, thank you, Your Honor. I appreciate the help. It seems to me that that's exactly right. And what you have here is conflicting factual testimony on all of these issues. Mr. Cherry is going to get up here and talk to you about the inventorship issue. And the best you can come to when you read all of that fairly is there's a dispute as to that. He's going to talk to you about the scrapbooker issue. I think I just covered that. Was the prosecuting attorney deposed here? Not that I'm aware of, Your Honor. Certainly, nobody has cited to it in their brief or included in the record, if you will. So we don't have any evidence of intent by the prosecuting attorney, which again suggests that the matter ought to go back to the district court for further proceedings. I see that I've got about five minutes left in my rebuttal. Let me get to the discovery issue real briefly. So the district court abused its discretion in dismissing this case for discovery of ideology. It did it really for three reasons. Let me get through the three quickly. One, essentially what- Just so you know, you just entered your rebuttal. Oh, I'm sorry. You may proceed. Very briefly, and we'll cover this in a minute. One, the parties bypassed Rule 37. If QuickCuts had complaints about things it wasn't getting in discovery, it should have been filing a motion to compel, or it should have entered an order, and sanctions should have been done under Rule 37. Here, what happened is that the court bypassed the Rule 37 process by relying on its inherent authority, and it shouldn't have done that. Second, it didn't consider all the alternatives, and it didn't find the most reasonable alternative. Third, as I leave myself a little bit of time for rebuttal, when you look at a sanction, dismissal is the harshest sanction there is. And unless the court considered all the other sanctions, concluded they were inappropriate, and then frankly, unless this court concludes they're inappropriate, this sort of case ought not be dismissed because of discovery abuses. Wait, so you are saying kind of a procedural shortcoming, because he didn't give us an analysis of the alternative? No, I think, Your Honor, again, you're left with- I recognize it's an abuse of discretion standard. You're left with a record, and what the record shows is what Judge Wake says he did, and he didn't consider those things. Secondly, even if he did, even if he did consider all of them, he made the wrong discretionary decision. The cases teach that dismissal is a drastic last sanction. And certainly, whereas here, he doesn't appoint to any affirmative misstatements, the issues, again, go to the credibility of my clients about what they did or didn't do in discovery, there should have been a hearing. It shouldn't be decided on a motion for summary judgment where issues like spoilation get raised, and a motion for sanctions, I'm sorry, where issues like spoilation get raised in the reply. I'm going to save my last two minutes for a public hearing. Thank you. Sherry. Thank you. May it please the court, I'm Jared Sherry, with the Department of Lifestyle and Crafts. So I'd like to first address an issue that we didn't hear about, and that is the issue of sanctions under Rule 56H, which I think is the appropriate starting point for the analysis on the summary judgment motion. And I think that's the appropriate analysis, because many of the factual disputes that are addressed in the briefs by spellbinders have their basis in a declaration that the district court found to have been submitted in bad faith, and that the district court struck under Rule 56H. So that ruling, again, is under the standard of review of abuse of discretion. In the Ninth Circuit, which both parties agree is the appropriate standard, or the appropriate law that's applied, the court has to find that the judge's findings and decision was illogical, implausible, without supporting the record. Now, I would admit that this would be a difficult finding. Well, let me ask you again another logistical point. If we were to agree with you that the district court was correct in striking the declaration, where does that leave us with respect to the inequitable conduct? I think that leaves us in an interesting place with regard to many of the allegations of factual dispute. For example, how much money was at stake with the declarants, whether or not these ties were insignificant, as alleged by spellbinders. These are only supported in the 2012 Keran Declaration. And as a result, under Rule 56E, the district court was within its discretion to grant summary judgment of the motion and supporting materials so that the movement is entitled to it. By virtue of having failed to raise an evidentiary conflict, the- So let me just see if I understand. But if we were to agree with you again that the declaration should have been struck, then are you saying that that eliminates the entire basis for your friend to argue that there are factual disputes remaining, at least with regard to the intent of the inequitable conduct charges? Is that what you're saying? I'm saying that's not precisely what I'm saying. What I'm saying is, with regard to intent, I would like to address that in just a moment. But with regard to the issue of, take, for example, the scrapbooker declarations, as the term has been used, there's a lot of facts in there. We've heard that these relationships are insignificant and so on. They needn't be disclosed. Those facts come from the stricken declaration. And as a result, if that declaration is properly stricken, there can be no argument that that raises a genuine issue of material fact. Does that answer your question? Sort of. Thank you. I'd like to address the intent issue. Yeah. Our law, exergen, requires, as a pleading requirement, interestingly, that you have to show precisely who, what, when, where, and why the intent occurred. You have to identify the person who had the intent, when, where, give their motives. This is a pleading requirement. How can you enter summary judgment when the pleading requirements weren't even met? Your Honor, I would submit that the pleading requirements were met. Then identify the who with each item of specific intent and where that was done by the judge and what underlies it. I would identify Mr. Karen as the actor who primarily has the intent with regard to these issues that were identified. So take, for example, the issue of inventorship. Mr. Karen testified during his deposition he wanted Mr. Dewan removed because he was trying to sever all ties with him. Now, there's been an assertion made for the first time on appeal that Mr. Dewan was removed because he invented claims that were withdrawn during prosecution, which was never argued below. Secondly, it conflicts with the interrogatory responses identifying Mr. Dewan as the inventor of Claim 47. And it conflicts with the assertions made to the district court that Mr. Dewan invented nothing. So with regard to inventorship, Mr. Karen is the individual who had the requisite intent. He had the intent during the prosecution of the application. The court make that finding that they specifically identify Mr. Karen and the point at which he formed the intent and the acts which show that intent? I do not believe the court's order explicitly stated. I don't think the court did either. It's an excellent attorney argument. Don't we have to rely on the law that requires these findings in pleadings? And how can we sustain a summary judgment that doesn't meet the pleading requirements? Well, Your Honor, even though the court did not explicitly come out and say, I find on X date that Mr. Karen had the requisite intent, I think if you read the court's order, the findings are more than adequate to show that the court found intent by Mr. Karen with regard to inventorship and other issues. I'll raise one other issue, if we'll indulge you for a moment, about the 2011. Is there any evidence that Karen even knows what inventorship means? This isn't an attorney. This is somebody who's, well, he's clearly coached to make certain statements and say, I don't know at times what he earlier said he knew something. But is there any evidence that, in fact, is there even a determination of inventorship that would show a conflict with his intent in testifying to what he said? So first, with regard to your first question about whether he knows what inventorship is, he is the named inventor on multiple patent applications. He's repeatedly signed a declaration. He's been through the patent prosecution process. He's been through re-examination. He has skilled patent counsel, many years' experience. So the claim that he doesn't know what inventorship is, I think, is certainly not found anywhere in the record. It's not been argued by my opponents. I had another question, but now I've forgotten it. Is there determination of inventorship? No, no, there is not. And as the case found in this court's case and perceptive found, the issue with regard to inventorship is not inventorship per se. And by the way, part of your answer is that we impute the knowledge of his counsel to Karen as a basis for Karen's intent? No, Your Honor, I would certainly not impute that. But your question is? Well, then how do we know Karen even knows what inventorship is? Well, let me, sure. You're going to say, well, he had a counsel. We don't even have the counsel's deposition in this record. That is correct. Remember, exergence requirement, who, where, who, what, when, where, why, with great specificity. Did Mr. Karen say that Dai Wan was made an inventor only because he was contributing financial support? He did, Your Honor. That is absolutely correct. I think that would go to the intent with regard, and it might also go to Judge Rader's point about the knowledge, correct. Let me ask you about the group of people who submitted affidavits on commercial success. Where's the intent with regard to that issue? Because there's no indication that that necessarily was probative of anything. And I think their argument was, well, either we didn't even know about it, or we didn't think it was significant. Why isn't that, at least, on the list of reasonable inferences to be drawn with regard to that? Absolutely. So I think that's an excellent question. So first of all, my opponents have characterized these declarations as being solely about commercial success. If you look at these statements made in the Patent Office, it is stated flatly that these declarants are also testifying to novelty. My opponents say, squarely. I thought the record was clear. Maybe I'm wrong, that you were relying on the but for materiality. I thought you were arguing that this was, at least, very material with regard to the commercial success. It is both, Your Honor. They've submitted them for two reasons. One is novelty, which was argued in the response that was filed by Spellbinders with the Patent Office. It specifically states, the declarants state their opinion that the claims are novel. And then, secondly, it is with regard to commercial success. Now, in this court's precedent, there is a mandatory statement that this court said, it is not an owner's burden to impose that disclosure of financial relationships be made. This court has, at least, tried. And that burden is not on the people. That's on the patentee, the applicant. Correct. I would assume that the burden is on the patentee, although the precedent is not explicitly set. So this court has twice affirmed summary judgment in nearly identical circumstances. I'm not sure they said, by the way, the claims were novel. They said the products were. Again, and we're into this netherworld of who had the intent when they didn't even know what intent they had to have. I think you make a good point. But the assertion that product is novel versus a claim is novel. The claim, it actually says the claims are novel in part of the argument. So with regard to an argument that's about the novelty of claims, this goes to yet another issue that I'd like to address. And that is the two declarations. So let me take a step back. Seven declarations were stated. You started to refer to, you say we have two cases. I recall that we have cases with regard to these declarations. Do those cases say that we don't have to establish under these circumstances a but-for materiality or a specific intent? Your Honor, they both find that specific intent is required. However, the but-for materiality came from their offense, which came after the two cases. So we still need intent. We still need intent, absolutely. And in those cases, intent was, there was a lot of statements from this court with regard to the reason that intent should be presumed in these sorts of cases. That first of all, the Patent Office has no means to investigate the claims that are being made to it, and therefore relies on the duty of candor. That the presentation of a broad consensus. Well, there is an argument that this was insignificant. And perhaps that they didn't even know or they weren't paying attention to these particular requirements. So why isn't that at least something upon which we would say you've got to have a trial to determine the specific intent? A great point. And I would point you to the issue that the Karen Declaration, which purports to establish these facts, which purports to claim that these relationships were de minimis, that is now stricken. And that evidence is not properly reliable. So are you saying that because that's stricken, if we end up having a trial on inequitable conduct, they're not going to be able to put on any, they would be precluded in any event from putting on any evidence with regard to these declarations? Well, I don't think that's the question before the court. The question before the court is in consideration of this motion for summary judgment. What is, what is the question? No, but I have a, there is a question before the court. And it's the one that I'm asking. Sure. And my question is whether or not it's your position that even if we were to affirm striking the declaration, that would preclude them from putting on any kind of a case in connection with the summary judgment trial. I'm sorry, with an inequitable conduct trial. That's an issue I haven't considered. Certainly if we were to go back, we would. Well, I thought your answer, I thought you were trying to say there's no real issue for, of material fact or of intent to deceive. I thought your response was because the declaration has been struck. Did I misunderstand your point? I believe I perhaps misstated it inartfully. So what I would state is, our position is that if we were to go back, that would be an issue that would be hotly contested about to what extent evidence could be presented. Because it's been asserted that the district court found no direct conflict with regard to the stricken declaration. And the, excuse me, there was no direct conflict in the record. That is indeed false. So if you look at the court's order, one of the assertions was there has been no interaction between Spellbinders and collaborator, Ms. Korupski. That was just flatly indicted. Just as a matter of reference, didn't the district judge say he would grant inequitable conduct even if the document was not struck from, the declaration was not struck from the record? He did, Your Honor. It's kind of irrelevant, isn't it? It was irrelevant to the judge there. It's probably irrelevant to us, too. I think that's a point that I would be comfortable conceding. Yeah, well, that's where you started. If we vacate any of the inequitable conduct findings, don't we have to go back for an equitable balancing? Your Honor, the question that we would submit is that the court has stated that all acts of inequitable conduct are to be considered as a whole, not parsed out individually. And it's also like the Nielsen versus Ostrom-Solania case, where there are a number of relatively small acts. The court even went the length of saying that perhaps these acts individually might not be considered egregious enough to warrant a holding of inequitable conduct. But the cumulative effect of these acts was sufficient. And I would say here, where we have the issue of inventorship, we have these declarations. And then we have the Karin Declaration, which I think is perhaps the most egregious of the acts. We have Mr. Karin testifying about what a skill in the art would or would not know. He uses the term skill in the art, and then describes technical difficulties that a person would face when trying to modify the prior art. In his deposition, Mr. Karin finally conceded he has no skill in the art. He submitted it in the declaration. I have no skill in the art. So with regard to the Karin Declaration in particular, all of these issues come together to support the issue of a holding of inequitable conduct. And then I'd like to turn for another two minutes for the dismissal sanction. So with regard to the dismissal sanction, my opponents have also tried to sever the acts into discrete acts that each individually they claim are not per se unreasonable. However, what the district court found is that these acts present a pattern of deception that literally began from the outset of the case. It began with the response to a counterclaim where Spellbinders asserted that it didn't know of a prior relationship between a co-inventor and a business partner in QuickPats. It turns out that just a few weeks later, about two months later, Mr. Karin candidly admitted he knew about the relationship. That was even the reason that he sought out his co-inventor, because he had experience. So that conduct continued. That conduct continued throughout the stay of the case, which was stayed pending re-exam. Spellbinders tried to argue that it should be excused from producing admittedly responsive evidence by virtue of the fact that it discarded that evidence. Now, there's been a point made that Spellbinders didn't have a chance to address this allegation fairly. They made this as a defense for an accusation that they didn't produce documents. So the response was, we claim you didn't produce documents. The response is, we discarded the sources of those documents, so how could we produce them? I would assert that that doesn't necessarily need a hearing to determine whether or not the documents were discarded and admitted. In turning to the deposition and so on, Mr. Karin has flatly contradicted himself repeatedly with regard to a lot of issues that go to his intent. For example, this court found intent in a case where an attorney tiptoed around the truth. Clearly, we have Mr. Karin tiptoeing around the truth with regard to the scrapbooker declarations, with regard to his 2011 declaration, with regard to inventorship. So I would leave for the court that the issues should all be weighed in their totality. We have 14 instances of misconduct, seven before the patent office, seven before the district court. And there are more that the district court simply didn't address. So I would leave for the court's consideration the fact that these issues, even if one or more may not persuade the court, even if that is the case, I would submit that all seven of each type of misconduct should be balanced as a whole and considered. That's all I have for the panel. That's questions. Thank you, Mr. Burke. You have about three minutes, a little more. Thank you, Your Honor. Let me start with the argument that if Rule 56F, rulings that help in the affidavit is struck, the court is no material issue of fact on the issues of inequitable conduct. And what I would do is refer the court to footnote 17 on page 26 of our reply brief, where notes that plaintiffs in their answering brief admitted there was evidence in addition to the 2012 deposition, and where we go through and point to the court that if you go back and look at the brief, evidence we're relying on as to most of these arguments as to create an issue of materiality isn't what was in the 2012 deposition. It's information in the declaration. I'm sorry, it's information the court had before another one. Didn't the court really present a moving target on the McGuffery-Krupsky relationships and on inventorship and on the data conception and on and on and on? But, Your Honor, if you look at the question of intent, the court could not conclude with or without the 2012 declaration the kind of fact that the court was asking Mr. Cherry about, the who, what, when, where, why of specific intention. Now we're talking about litigation misconduct. Isn't that an even tougher hurdle for you to get over? I think not, Your Honor. First of all, Mr. Cherry's argument was you've got to reverse the summary judgment if you uphold strictly the 2012 declaration. My point is, no, you don't. There are other issues, there's other evidence in the record that creates a genuine issue of material fact, particularly in terms of intent. As we pointed out, the trial court abused its discretion in striking the 2012 declaration in its entirety when it had concerns about only selected paragraphs of it. And that was inappropriate. That's an abuse of discretion. Mr. Cherry relies on the Ferry and Refat paradigm trilogy. He told you he was lying on two of them. He didn't tell you which ones. I think there's something to point out. Mr. Cherry says what those cases tell you is you presume intent if someone doesn't disclose their relationship. If FerriSense stands for one thing, it stands for the proposition that you don't presume or infer intent. Mr. Cherry's client has the obligation to present clear and convincing evidence of specific intent to deceive the patent office. He can't get away with a presumption. He can't get away with an inference. That's what FerriSense teaches. Judge Rader asked a question about, well, what happens if we find that we uphold the trial court on one of the issues or two of the instances of inequitable conduct, but not the others? I think the answer is this has to go back to Judge Wake. Because Judge Wake is obligated to weigh all of the considerations and decide if there's inequitable conduct here. And I would refer the court in that regard to the digital control case at 437 F. 2nd, 1309. Trial court abused its discretion in dismissing this case when there were other sanctions available, if granted an appropriate summary judgment. Thank you, Your Honor. Thank you.